UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                          Case No. 10-67778

BWP TRANSPORT, INC.,                            Chapter 11

          Debtor.                               Judge Thomas J. Tucker
_____/

**OPINION REGARDING OBJECTIONS TO
CONFIRMATION OF DEBTOR'S PLAN**

This Chapter 11 case presents a dispute over confirmation of the proposed plan of

reorganization filed by the Debtor, BWP Transport, Inc. ("BWP"). BWP's largest creditor,

JPMorgan Chase Bank, N.A. ("Chase,") which also is a secured creditor, objects to confirmation

on numerous grounds. Among these, Chase argues that BWP's plan unfairly discriminates

against Chase, because the plan proposes to treat its secured claim less favorably than several

other secured creditors. Chase also argues that BWP is a solvent debtor whose plan fails to meet

the requirements that case law imposes on solvent debtors.

For the reasons stated in this opinion, the Court will deny confirmation of BWP's plan.

**I. Background**

As BWP says in its combined plan and disclosure statement,

> [BWP] is a trucking company specializing in the transportation,
> storage, and delivery of dry bulk materials - specifically plastics.
> [BWP]'s fleet provides transportation services to all 48 states as
> well as Canada and Mexico. [BWP] began in 1989 as a local less-
> than-truckload and truckload dry van freight company. Since then,
> [BWP] diversified into a dry bulk storage, delivery, and
> transportation company.[1]

---

[1] Debtor's Third Amended Combined Plan of Reorganization and Disclosure Statement (Docket
# 128) at 32.

The Court held a hearing on May 18, 2011, regarding confirmation of BWP's proposed plan, contained in the document entitled "Debtor's Third Amended Combined Plan of Reorganization and Disclosure Statement."[2] During the confirmation hearing, the Court heard oral argument on Chase's objections, which were the only unresolved objections to confirmation. On May 19, 2011, Chase filed a supplement to its objections,[3] which the Court has reviewed.

Soon after the confirmation hearing, on June 6, 2011, BWP's sole shareholder, Sandra J. Lickwala, filed a voluntary Chapter 7 case in this Court, jointly with her husband, Donald P. Lickwala (Case No. 11-55831). On July 14, 2011, the Chapter 7 Trustee in the Lickwala bankruptcy case, Charles L. Wells, III, filed an objection to confirmation in this case.[4] The Trustee claimed that Sandra Lickwala's 100% ownership interest in BWP was property of the Lickwala bankruptcy estate. The Trustee appears to have assumed that this gave him control over BWP's actions in its Chapter 11 case.

In his objection to confirmation of the BWP Plan, the Trustee stated that "he is conducting due diligence regarding the debtor [Sandra Lickwala] and may, among other things, attempt to negotiate an amendment to the plan regarding the treatment of [Chase] to provide for entry of a consensual confirmation order."[5]

In response to the Trustee's objection, the Court entered an order requiring BWP, the Lickwala Trustee, and Chase to file a joint status report, "describing the status of, and prospects

---

[2] Docket # 128 (the "BWP Plan" or the "Plan").

[3] Docket # 138.

[4] Docket # 147.

[5] *Id.* at ¶ 5.

2

for, negotiation of a possible consensual plan of reorganization for BWP Transport, Inc.".[6] The parties filed their joint report on August 25, 2011, stating that no settlement had been reached, and expressing differing views about the likelihood of settlement.[7]

There has been much motion activity in the Lickwala bankruptcy case during the last few months. Recently, however, the Trustee and the Lickwalas have agreed to a settlement of numerous disputes between them. One of the terms of the settlement is that the Trustee will abandon the Lickwala estate's ownership interest in BWP. The Trustee has filed a motion for approval of the settlement. Chase, which is also a creditor in the Lickwala case, has objected to the settlement. A hearing is scheduled for January 11, 2012.[8] Meanwhile, Chase's objections to confirmation of BWP's Plan in this case remain unresolved.

## II. Jurisdiction

This Court has subject matter jurisdiction over this bankruptcy case under 28 U.S.C. §§ 1334(b), 157(a) and 157 (b)(1), and Local Rule 83.50(a) (E.D. Mich.). This matter is a core proceeding under, among other possible provisions, 28 U.S.C. § 157(b)(2)(L).

## III. Discussion of Chase's objections to confirmation of BWP's Plan

### A. The Plan's treatment of Chase

BWP is liable to Chase, either directly or as a guarantor, on four promissory notes. BWP's Plan bifurcates the claim of Chase. In Class E.4 of the Plan, BWP says that "Chase's claim is secured [by] Debtor's cash, inventory, chattel paper, accounts, equipment, general

---

[6] Docket # 149.

[7] Docket # 154.

[8] *See* Docket ## 132, 143, 144 in the Lickwala case (Case No. 11-55831).

3

intangibles and the proceeds therefrom."[9]  The Plan says that the total amount of Chase's claim is $2,101,172.64.  The Plan says that the value of Chase's collateral, and therefore the allowed amount of Chase's secured claim under 11 U.S.C. § 506, is $1,531,500.00.[10]  According to the Plan, therefore, Chase's unsecured claim is $478,672.60.[11]

The Plan proposes to pay Chase's $1,531,500.00 secured claim in full over 6 years with 6.25% interest, with 72 monthly payments of $25,562.50 in principal and interest, starting 30 days after the Plan's "Effective Date."  The Plan also states that Chase will retain its liens until its secured claim is paid in full.[12]

The Plan places Chase's $478,672.60 unsecured claim in a class by itself, Class E.11. The Plan proposes to pay Chase's unsecured claim in full over 5 years with 7.575% interest, with 60 monthly payments of $9,608.67 in principal and interest, starting 30 days after the Plan's "Effective Date."[13]

### B.  Other features of BWP's Plan

In addition to grouping and treating administrative claims and priority tax claims, BWP's Plan contains 12 classes of non-priority claims.  The first 8 classes, E.1 through E.8, are secured

---

[9]  Plan (Docket # 128) at 12.

[10]  According to the Plan, Chase's collateral has the following values: Accounts Receivable $1,400,0000; Office Equipment and Furnishings $91,500.00; Computers and Software $20,000.00; and Tools $20,000.00.  *Id.*

[11]  *Id.* at 12, 13.

[12]  Plan at 12-13, § G.4.  The "Effective Date" is defined to mean 30 days after entry of a "Final Order" confirming the Plan, and a "Final Order" means, in essence, an order that is no longer appealable. *Id.* at 3, §§ A.19, A.21.

[13]  *Id.* at 20-21, § G.11.

4

claims, including Chase's secured claim in Class E.4. Each of these classes contains the claim of a single secured creditor. Six of these secured creditors have first liens in specified trailers and/or tractors owned by BWP. The remaining secured creditor, other than Chase, is the United States Small Business Administration, Class E.8. That creditor has a security interest in "certain cleaning system equipment" valued by the Plan at $79,000.00.[14]

The other Plan classes are three classes of unsecured claims, E.9 through E.11, and a class for BWP's equity interests, E.12. The three unsecured claim classes contain (1) all unsecured claims less than $10,000.00; (2) all unsecured claims equal to or greater than $10,000.00 except the unsecured claim of Chase; and (3) the unsecured claim of Chase.[15]

BWP's Plan proposes to pay every claim in every class, secured and unsecured, in full, and with interest, with variations among the classes regarding the interest rate and length of time for payments. The Plan also proposes that BWP's equity interest holder retain her interest.

### C. Chase's objections to confirmation of BWP's Plan

#### 1. Chase's objection that the Plan unfairly discriminates against Chase's secured claim

Except for the two classes populated by Chase, every class of secured and unsecured claims under BWP's Plan voted to accept the plan.[16] Chase voted to reject the Plan, in both its capacity as the secured claim class E.4 and the unsecured claim class E.11. Because of Chase's rejection, the plan can be confirmed only on a "cramdown" basis under 11 U.S.C. § 1129(b).

---

[14] *Id.* at 18-19, § G.8.

[15] *Id.* at 19-21, §§ G9-G12.

[16] *See* Ballot Summary (Docket # 136).

5

Among the requirements for confirmation under § 1129(b) is that the Plan "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims . . . that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1).

Chase argues that the Plan discriminates unfairly against Chase's secured-claim class, because the Plan proposes to pay Chase's secured claim in full over a longer period — 6 years — than the 5-year period in which some of the other secured-claim classes will be paid in full.

As noted above, under the Plan Chase's secured claim is to be paid, with interest, by equal monthly payments over 6 years. But five of the other secured claims are to be paid, with interest and by equal monthly payments, over a period of only 5 years.

Among the secured claim classes in the BWP Plan, there are variations in claim amount, collateral, payment period, and interest rate. The following table details these differences:

| Class: | Creditor: | Secured Claim Amount: | Collateral: | Payment Period: | Interest Rate: |
|---|---|---|---|---|---|
| E.1 | Eastern Michigan Bank | $320,833.31 | 8 trailers | 6.25 years (75 months) | 5.5% |
| E.2 | Fifth Third Bank | $511,944.07 | 15 trailers | 5 years | 6.0% |
| E.3 | General Electric Capital Corp. | $234,144.96 | 8 trailers | 5 years | 6.0% |
| E.4 | Chase | $1,531,500.00 | cash, inventory, chattel paper, accounts, equipment, general intangibles | 6 years | 6.25% |

6

| Class: | Creditor: | Secured Claim Amount: | Collateral: | Payment Period: | Interest Rate: |
|--------|-----------|----------------------|-------------|-----------------|----------------|
| E.5 | JX Financial, Inc. | $321,601.43 | 18 trailers, 10 tractors | 5 years | 5.5% |
| E.6 | PACCAR | $1,000,783.55 | 2 trailers, 29 tractors | 5 years | 6.0% |
| E.7 | Seaway Community Bank | $196,840.79 | 10 trailers, 3 tractors | 5 years | 5.0% |
| E.8 | Small Business Admin. | $79,000.00 | cleaning system equipment | 6 years | 5.0% |

As the table shows, BWP's Plan would pay off the secured claims of five of the secured creditors in 5 years, while paying Chase's secured claim and the claim of the Small Business Administration in 6 years, and the claim of Eastern Michigan Bank in 6.25 years.

Chase argues that the shorter payment period for the "5-year" secured creditors is unfair discrimination against Chase, because stretching Chase's payment period out for a year longer imposes a greater risk of default by BWP and loss by Chase than the risk borne by the secured creditors who are to be paid in 5 years.

To determine whether BWP's Plan "does not discriminate unfairly" within the meaning of § 1129(b)(1), the Court applies the presumption-based standard used by the court in *In re Dow Corning Corp*., 244 B.R. 696, 702 (Bankr. E.D. Mich. 1999). Under this standard,

> a rebuttable presumption of unfair discrimination would arise where:
>
> > there is: (1) a dissenting class; (2) another class of the same priority; and (3) a difference in the plan's treatment of the two classes that results in either (a) a materially lower percentage recovery for the

> dissenting class (measured in terms of the net
> present value of all payments), or (b) regardless of
> percentage recovery, **an allocation under the plan
> of materially greater risk to the dissenting class
> in connection with its proposed distribution.**

> The plan proponent could rebut the presumption of unfairness
> established by a significant recovery differential by showing that,
> outside of bankruptcy, the dissenting class would similarly receive
> less than the class receiving a greater recovery, or that the alleged
> preferred class had infused new value into the reorganization
> which offset its gain. **The plan proponent could overcome the
> presumption of unfair treatment based on different risk
> allocation by showing that such allocation was consistent with
> the risk assumed by parties before the bankruptcy.**

*Dow Corning,* 244 B.R. at 702 (citations and footnote omitted, emphasis added); *see also In re Armstrong World Indus., Inc.*, 348 B.R.111, 122 (D. Del. 2006); *In re Aleris Int'l, Inc.*, No. 09-10478, 2010 WL 3492664, at *31 (Bankr. D. Del. May 13, 2010); *In re Unbreakable Nation Co.*, 437 B.R. 189, 202 (Bankr. E.D. Pa. 2010).

BWP and Chase have not discussed the "unfair discrimination" issue in the specific terms of the *Dow Corning* standard, quoted above. With respect to the three elements necessary to establish the rebuttable presumption of unfair discrimination, Chase meets the first element — it is a dissenting class.

And Chase meets the second element — the "5-year" secured claim classes are of "same priority" as Chase, within the meaning of the *Dow Corning* standard. Although Chase and the other secured creditors all have security interests in different collateral, for purposes of the "unfair discrimination" test, all of the secured creditors are considered to have the same priority level. *See CoreStates Bank, N.A. v. United Chem. Technologies, Inc.*, 202 B.R. 33, 47 n.12 (E.D. Pa. 1996)("the comparison called for by the unfair discrimination provision of

8

§ 1129(b)(1) relates to the *category* of similarly situated claimants" and "[t]he appropriate inquiry focuses on discrimination among categories of creditors who hold similar legal claims against the debtor, *i.e.* 'Administrative Claims,' 'Secured Claims,' 'Priority Claims,' etc."); *In re Trenton Ridge Investors, LLC*, Nos. 09-62570, 09-63160, 2011 WL 4442270, at *41 (Bankr. S.D. Ohio June 23, 2011)(the purpose behind the unfair discrimination test is that "a dissenting class will receive value equal to the value given to all other similarly situated classes" and "[i]n the context of unfair discrimination, the phrase 'similarly situated' suggests an 'inquiry focuse[d] on discrimination among categories of creditors who hold similar legal claims against the debtor, [such as] 'Administrative Claims,' 'Secured Claims,' [and] 'Priority Claims'").

Whether Chase meets the third element is unclear on the present record. That element requires one of two things — either (a) the shorter payment period for the "5-year" secured claim classes results in "a materially lower percentage recovery for [Chase,] the dissenting class (measured in terms of the net present value of all payments);" or (b) Chase's longer payment period, compared to the "5-year" classes, allocates to Chase a "materially greater risk . . . in connection with its proposed distribution." *Dow Corning,* 244 B.R. at 702.

Chase has not argued the first prong of the third element — *i.e.*, that it will receive a materially lower percentage recovery on its secured claim than the "5-year" secured claim classes. With respect to the present value of payments, the Court notes that while Chase's 6-year payment period is longer, Chase also is to be paid interest at a higher rate than the "5-year" secured creditors. As the table above shows, Chase's secured claim is to receive interest at 6.25%, while all of the "5-year" secured creditors are to receive a lower rate of interest — 6.0, 6.0, 5.5, 6.0 and 5.0%. And unlike all of the other "5-year" secured creditors, Chase's claim is

9

bifurcated, and the $478,672.00 unsecured portion of its claim is to be paid over 5 years at 7.575%, a rate significantly higher than any other class of claims, secured or unsecured, is to receive. None of the "5-year" secured claims are to be paid at an interest rate higher than 6.0%, and as the following table illustrates, the unsecured creditor classes other than Chase's class are to be paid a much lower interest rate than Chase:

| Class: | Unsecured creditor(s) in class: | Total amount of class claims: | Payment Period: | Interest Rate: |
|---|---|---|---|---|
| E.9 | claims less than $10,000 | $51,824.32 | 1 year | 3.5% |
| E.10 | claims $10,000 or greater (excluding Chase, includes S.B.A. unsecured claim) | $507,310.20 | 5 years | 4.25% |
| E.11 | Chase | $478,672.00 | 5 years | 7.575% |

Chase's unfair-discrimination argument invokes the second prong above, namely that the longer payment period for Chase allocates to Chase a "materially greater risk . . . in connection with its proposed distribution" than the risk facing the "5-year" secured claim classes. Presumably, Chase is arguing, at least in part, that if BWP makes all of its Plan payments to all the secured creditors for a time, but then defaults on its Plan payments at any time before reaching the 6-year payoff date for Chase's secured claim, Chase will end up receiving payment of a lower percentage of its secured claim than the "5-year" secured creditors, who are to be paid at a faster rate under the Plan. Whether the risk of such a plan default actually occurring is high enough to be "material," and whether the differences in the ultimate percentage payments under such a default scenario would be material, are not issues the Court can decide on the present record. Rather, BWP and Chase must first have the opportunity to present evidence and briefing

10

on these issues.

The same is true regarding whether BWP can rebut the presumption of unfair discrimination, if it does arise. Under *Dow Corning*, "[t]he plan proponent [can] overcome the presumption of unfair treatment based on different risk allocation by showing that such allocation [is] consistent with the risk assumed by parties before the bankruptcy." *Dow Corning,* 244 B.R. at 702. BWP's counsel argued at the confirmation hearing that the nature of Chase's collateral — chiefly, accounts receivable — justifies allocating the greater risk of a one-year longer payoff to Chase, compared to the other secured creditors, whose collateral is tractor trailers and tractors. Further factual development and briefing would be necessary before the Court could determine whether (1) Chase's collateral is such that Chase assumed a greater risk before the bankruptcy; and (2) if so, whether that greater pre-petition risk is consistent with the greater risk allocated to Chase by the Plan's one-year longer payout (6 years versus 5 years).

For these reasons, the Court cannot presently make a final ruling on Chase's "unfair discrimination" objection. Further factual development, and possibly an evidentiary hearing, and briefing, would be required. All of this is unnecessary at present, however, because the Court must deny confirmation of BWP's Plan on other grounds, discussed below, and will allow BWP to file a new plan. Whether this "unfair discrimination" issue will recur when BWP files a new plan remains to be seen.

### 2. Chase's objection that BWP is a "solvent" debtor whose plan does not meet the requirements imposed on solvent debtors

As noted above, one of the requirements for confirmation on a "cramdown" basis under § 1129(b) is that the Plan "is fair and equitable, with respect to each class of claims . . . that is

impaired under, and has not accepted the plan." 11 U.S.C. § 1129(b)(1). Chase argues that BWP's Plan is not "fair and equitable" to Chase.

Chase argues that BWP is a "solvent" Chapter 11 debtor. The Sixth Circuit has held that when the debtor is solvent, the "fair and equitable" requirement for confirmation and the "absolute priority rule" mean that, "absent compelling equitable considerations," the Chapter 11 plan must pay creditors in full, in accordance with their pre-petition rights, including all of their contractual rights. *See In re Dow Corning Corp.*, 456 F.3d 668, 679 (6th Cir. 2006). This means full payment of each secured and unsecured claim, with post-petition interest at the rate specified in the parties' contracts, including any default rate of interest. *See id.* at 678 (quoting legislative history), 680. Thus, in a solvent-debtor case, there is a presumption that even unsecured claims must be paid default-rate interest. *Id.* at 680. And even unsecured claims "may recover their attorneys' fees, costs, and expenses from the estate of a solvent debtor where they are permitted to do so by the terms of their contract and applicable non-bankruptcy law." *Id.* at 683. And such fees, costs and expenses are not necessarily "limited to those incurred in enforcing the contract." *Id.* at 685. That depends on the terms of the parties' contract and what the applicable non-bankruptcy law say on that subject. But "[b]ankruptcy courts remain free, of course, to limit recovery to those attorneys' fees, costs and expenses which are *reasonable* under the circumstances." *Id.* at 686 n.4 (italics in original).

Chase argues that because BWP is a solvent debtor, the *Dow* case requires the Plan to pay Chase in full with interest at its contractual default rates of interest, and to pay Chase for its attorney fees and expenses, as permitted by Chase's contracts and by Michigan law. Because the Plan does not propose this, Chase says, the Plan is not "fair and equitable" and therefore may not

12

be confirmed under § 1129(b).

At the confirmation hearing, BWP's attorney would not take a position as to whether or note BWP is a solvent debtor, arguing that this is an "open question." But he argued that even if BWP is solvent, BWP's Plan meets *Dow's* requirements for solvent debtors, described above.

The Court finds that BWP is a "solvent" debtor in the sense that term is used in *Dow*. And the Court finds that the Plan's treatment of Chase does not meet *Dow's* requirements for such a solvent debtor. As a result, BWP's Plan cannot be confirmed.

**a. BWP is a "solvent" debtor**.

In the *Dow* case, the Sixth Circuit did not define what it means for a Chapter 11 debtor to be "solvent." In *Dow*, the parties agreed that the debtor was at all times "fully solvent."[17] The Court presumes that *Dow* used the word "solvent" to mean not "insolvent," as the term "insolvent" is defined in the Bankruptcy Code. In pertinent part, Bankruptcy Code § 101(32) defines "insolvent" this way:

> (32) The term "insolvent" means —
> (A) with reference to an entity other than a partnership and a municipality, financial condition such that **the sum of such entity's debts is greater than all of such entity's property, at a fair valuation**, exclusive of —
> (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
> (ii) property that may be exempted from property of the estate under section 522 of this title;

11 U.S.C. § 101(32)(A)(emphasis added).

BWP is "solvent," therefore, if the "sum of [its] debts" is *not* "greater than all of [its]

---

[17] "Unlike most debtors in bankruptcy, Dow Corning was fully solvent at the time it filed its bankruptcy case; it has remained so throughout the proceedings and has never disputed its ability to pay all its creditors." 456 F.3d at 671.

13

property, at a fair valuation."[18] BWP has admitted facts showing that when this case was filed, and also when BWP filed its Plan, the value of BWP's assets greatly exceeded the sum of its debts. BWP's schedules, filed on September 17, 2010,[19] show this. And BWP's liquidation analysis, attached as Exhibit A to its Plan,[20] shows this.

BWP's schedules listed BWP's assets and their values, as of the date this case was filed on September 3, 2010, as having values totaling $7,745,000.00. The schedules listed BWP's priority, secured, and unsecured debts as totaling $3,645,997.97.[21] Using these numbers, as of the petition date, the value of BWP's property exceeded its debts by over $4 million ($7,745,000.00 - $3,645,997.97 = $4,099,002.03).

The liquidation analysis that BWP attached to its Plan, filed April 20, 2011, states what

---

[18] In this opinion, the Court does not include the value of either of the types of property described in § 101(32)(A)(i) and (ii), which must be *excluded* for purposes of determining if an entity's debts exceed the value of its property. The BWP property values considered in this opinion do not include the value of any property of BWP that may have been transferred to another entity fraudulently. (And neither BWP nor Chase have identified any such property in their confirmation arguments, in any event.) Rather, the Court considers only the value of property still owned by BWP at the relevant time(s), not including the value of any possible fraudulent transfer claims that BWP or the bankruptcy estate may own or have owned.

And being a corporation, BWP has no exemptions under Code § 522. Only an "individual" debtor may claim exemptions under § 522, *see* 11 U.S.C. § 522(b)(1), and "individual" as that term is used in the Bankruptcy Code means a human being. It does not include a corporation. *See, e.g.*, *Friedman v. Comm'r*, 216 F.3d 537, 548 n.7 (6th Cir. 1999)("individual" as used in Code § 727(a)(1) does not include a corporation); *In re Sayeh*, 445 B.R. 19, 27 (Bankr. D. Mass. 2011)("individual" as used in Code § 362(k) means a human being, and does not mean an entity); *In re JAC Family Found.*, 356 B.R. 554, 556-57 (Bankr. N.D. Ga. 2006)("individual" as used in Code § 109(e) means a natural person); *Farm Fresh Poultry, Inc. v. Hooton Co.* (*In re Hooten Co.*), 43 B.R. 389, 390-91 (Bankr. N.D. Ala. 1984)("individual" as used in Code §§ 523 and 1141(d)(2) means a human being, and not a corporation or partnership).

[19] Docket # 24. This case was filed on September 3, 2010.

[20] Docket # 128, Ex. A, entitled "Liquidation Distribution."

[21] Docket # 24: Summary of Schedules, and Schedules B, D, E, and F.

the creditors in this case would receive upon a hypothetical liquidation under Chapter 7 occurring as of the effective date of the plan.[22]  In doing so, BWP listed two "liquidation distribution" scenarios: one that valued BWP's assets at "Fair Market Value" and one that valued the assets at "Liquidation."  The Court interprets BWP's "Liquidation" values as values under a forced-sale scenario.  Because the Bankruptcy Code's definition of "insolvent" requires using the value of a debtor's assets "at a fair valuation," and because BWP clearly is a "going concern" rather than a business "on [its] deathbed," the Court concludes that it should use the value of BWP's assets at "Fair Market Value," rather than under a forced-sale basis.  *See Global Technovations*, *Inc. v. Onkyo U.S.A. Corp.*, (*In re Global Technovations, Inc.*), 431 B.R. 739, 772 (Bankr. E.D. Mich. 2010), *aff'd.*, 2011 WL 1297356 (E.D. Mich. 2011)(when a business is a "going concern," "assets are valued at their market rather than distress (*i.e.*, liquidation) value")(citing *Heilig-Meyers Co. v. Wachovia Bank*, *N.A.* (*In re Heilig-Meyers Co.*), 319 B.R. 445, 457-58, 463 (Bankr. E.D. Va. 2004), *aff'd.,* 328 B.R. 471 (E.D. Va. 2005)).

The "Fair Market Value" of BWP's assets, according to BWP, is such that after deducting the value of all liens in BWP's assets, BWP has equity in its assets (called "TOTAL EQUITY") of $3,731,851.89.  Taking this total value, BWP subtracts the "Total Priority Claims" of $34,942.12, and the "Total Unsecured Claims" of $985,982.16.[23]  These debts total

---

[22]  BWP's liquidation statement was designed, at least in part, to help BWP demonstrate that its Plan met the confirmation requirement of 11 U.S.C. § 1129(a)(7)(A), that each holder of a claim or interest in each impaired, non-accepting class under the Plan would "receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date."

[23]  This $985,982.16 figure consists of "Unsecured Claims" ("Filed and Listed Claims") of $205,047.85 plus "Deficiency Claims" of Chase and the Small Business Administration totaling $780,934.31.  From this, and from the Plan's sections regarding the bifurcation and treatment of the

$1,020,924.28. Subtracting that sum from the "Fair Market Value" of BWP's assets leaves a surplus of $2,710,927.61. Thus, BWP's liquidation analysis shows that its assets, at a "fair valuation," exceed its debts by $2.7 million.[24]

From the foregoing admissions by BWP, the Court concludes that BWP was solvent when it filed this case, and was solvent when it filed its Plan.[25]

**b. Given the Court's conclusion that BWP is solvent, the Court concludes that the Plan does not treat Chase's claims as *Dow* requires.**

Because BWP is a solvent debtor, and based on the *Dow* case discussed above, the Court concludes that BWP cannot confirm a plan over Chase's objection, unless the plan proposes to pay Chase in full with interest at its contractual default rates of interest, and to pay Chase for its attorney fees and expenses, as permitted by Chase's contracts and by Michigan law. BWP does not argue, and the Court does not find, that there are any "compelling equitable considerations" for requiring less than this from BWP. *Dow Corning Corp.*, 456 F.3d at 679. But, as *Dow*

---

claims of Chase and the Small Business Administration, and its provisions stating that all of BWP's other secured creditors are fully secured (*i.e.*, that the value of their collateral exceeds their claims,) it is clear that BWP's statement of the "Fair Market Value" of its "TOTAL EQUITY" in its assets is not meant to imply that either Chase or the Small Business Administration are fully secured.

[24] In addition, the Court notes, as something of a reality-check on its solvency analysis, the following. In the projections that BWP filed with its Plan, it projects that BWP will at all times during the life of the Plan have a substantial cash reserve, after making its proposed plan payments each month. That reserve was projected to be $414,097.60 after the first month of plan payments, post-confirmation, in May 2011. And that cash reserve was projected to grow steadily, reaching $1,751,474.15 by the approximate time of the Plan's projected end, in December 2016. *See* Plan Exhibit B (Docket # 128).

[25] The Court also notes that it has reviewed the monthly operating reports that BWP filed for the months after BWP filed its plan, (Docket ## 131, 139, 142, 148, 153, 155, 159, 160,) and the Court does not find anything in those reports to indicate that BWP is no longer solvent today.

16

permits, and as Michigan law requires,[26] the Court will limit Chase's attorney fees and expenses to amounts that are "reasonable" under the circumstances. *See id.* at 686 n.4.

BWP's counsel argued at the confirmation hearing that BWP's Plan meets the requirements of *Dow*. The Court disagrees.

First, BWP's counsel is incorrect in arguing that the two interest rates in the Plan provide Chase with the equivalent of Chase's contractual default-interest rates. The parties have not presented any calculations on this specific issue, but the Court has done some calculations.

As noted earlier, BWP's Plan proposes to pay Chase's secured claim, which the Plan sets at $1,531,500.00, in full over 6 years, with interest at 6.25%. The Plan proposes to pay Chase's unsecured claim, which the Plan sets at $478,672.64, in full over 5 years, with interest at 7.575%.

But BWP's debt to Chase consists of four major parts, each with a different contractual default rate of interest. Chase filed an amended proof of claim on May 24, 2011. As labeled and described in the first attached page to Chase's amended claim, the claim includes the four following parts, with the following default rates of interest:[27]

---

[26] Under Michigan law, provisions in commercial contracts for payment of attorney fees and expenses are enforceable, to the extent the fees and expenses are reasonable. *See Central Transport, Inc. v. Fruehauf Corp.,* 362 N.W.2d 823, 829 (Mich. Ct. App. 1984).

[27] As noted in the chart, some of Chase's default interest rates are tied to the prime interest rate, and Chase's amended proof of claim assumes a prime rate of 3.25%. The Court notes that at all times relevant to its calculations, including the date of the confirmation hearing, the date of Chase's amended proof of claim, and at all times since then, the Wall Street Journal prime rate has been 3.25%. *See* Bankrate.com, at http://www.bankrate.com/rates/interest-rates/prime-rate.aspx.

17

| Chase claim and default interest rates | | default interest rate: |
|---|---|---|
| **BWP Note** | | 6.25% |
| principal balance | $711,075.41 | (prime plus 3%) |
| interest through 8-27-10 | $25,029.20 | |
| late fees and charges | $333.26 | |
| total: | **$736,437.87** | |
| | | |
| **Trust Note A** | | 9.15% |
| principal balance | $611,594.00 | |
| interest through 8-26-10 | $21,075.00 | |
| late fees and charges | $1,567.32 | |
| total: | **$634,236.32** | |
| | | |
| **Trust Note B** | | 6% |
| principal balance | $366,910.21 | (prime minus .25 plus 3%) |
| interest through 8-26-10 | $25,587.00 | |
| late fees and charges | $1,444.26 | |
| total: | **$393,941.47** | |
| | | |
| **Trust Note C** | | 10.275% |
| principal balance | $226,441.00 | |
| interest through 8-26-10 | $16,129.00 | |
| late fees and charges | $1,009.50 | |
| total: | **$243,579.50** | |

These debt amounts total $2,008,195.16, but they do not include pre-petition interest from August 26, 2010 to the petition date of September 3, 2010, and they do not include any post-petition interest. Nor do they include Chase's claim for attorney fees, discussed below.

The Court has done some calculations to see whether the interest that BWP's Plan would pay Chase is equal to or greater than the interest that Chase would receive at its contractual default rates. The Court has calculated the total interest that Chase would receive in the first year of BWP's Plan, and compared that to the total interest that Chase would receive on its four-part claim using Chase's contractual default rates of interest listed above. The Court calculated all of the interest using a 5-year amortization — i.e., assuming that each component of Chase's debt is paid over 5 years. Even though the Plan proposes to pay part of Chase's claim — the secured claim — over 6 years, in order to fairly compare the interest that would be paid in Year 1 under

18

the two scenarios (BWP Plan rates vs. Chase contract rates), all have to be amortized over the same length of time.[28]

For comparison purposes, another, minor adjustment had to be made, in the amount of Chase's unsecured claim under the BWP Plan. That is because the total amount of Chase's claim being used in this comparison is slightly higher in the BWP Plan ($2,010,172.64) than it is in Chase's amended proof of claim (adjusted for this exercise, as described above)($2,008,195.16). The Court therefore adjusted the Plan's amount of Chase's unsecured claim downward by the amount of this difference ($1,977.48), to $476,695.16.

The Court's comparison shows that BWP's plan would pay Chase total interest of $121,408.20 in Year 1. If Chase's default interest rates were used for each of the four parts of Chase's claim, on the other hand, Chase would be paid total interest of $141,020.93 in Year 1. The Plan, therefore, would fall $19,612.73 short of paying interest at the default rates in Year 1. The following chart shows the Court's calculations:

---

[28] This is because if the Court assumed that part of Chase's debt is to be paid over 6 years, rather than 5 years, in the same proportion that the BWP Plan proposes, there would not be any non-arbitrary way to decide which of the four components of Chase's debt (each with a different default interest rate) to assign to a 6-year amortization, as opposed to a 5-year amortization.

19

Plan's blended interest rate,
vs. contractual default rates:

| | | | Year 1 interest |
|---|---|---|---|
| **BWP Plan:** | | interest rate: | @ 5 year amort. |
| secured claim | $1,531,500.00 | 6.25% | $88,089.86 |
| unsecured claim | $476,695.16 | 7.575% | $33,318.34 |
| **Total:** | $2,010,172.64 | | **$121,408.20** |

| | | | Year 1 interest |
|---|---|---|---|
| **Chase claim and default interest rates** | | default interest rate: | @ 5 year amort. |
| **BWP Note** | | 6.25% | |
| principal balance | $711,075.41 | (prime plus 3%) | |
| interest through 8-27-10 | $25,029.20 | | |
| late fees and charges | $333.26 | | |
| total: | **$736,437.87** | | **$42,358.93** |
| | | | |
| **Trust Note A** | | 9.15% | |
| principal balance | $611,594.00 | | |
| interest through 8-26-10 | $21,075.00 | | |
| late fees and charges | $1,567.32 | | |
| total: | **$634,236.32** | | **$53,708.47** |
| | | | |
| **Trust Note B** | | 6% | |
| principal balance | $366,910.21 | (prime - .25 plus 3%) | |
| interest through 8-26-10 | $25,587.00 | | |
| late fees and charges | $1,444.26 | | |
| total: | **$393,941.47** | | **$21,741.81** |
| | | | |
| **Trust Note C** | | 10.275% | |
| principal balance | $226,441.00 | | |
| interest through 8-26-10 | $16,129.00 | | |
| late fees and charges | $1,009.50 | | |
| total: | **$243,579.50** | | **$23,211.72** |

| | | |
|---|---|---|
| Total of Chase's claim, at petition date: | **$2,008,195.16** | |
| | | |
| **Total interest at default rates, Year 1:** | | **$141,020.93** |
| | | |
| **BWP Plan's interest pays less in Year 1** | | |
| **to Chase by this amount:** | | **$19,612.73** |

This demonstrates that BWP's Plan proposes to pay interest to Chase that is materially less than the contractual default rate of interest.

Nor does BWP's Plan propose to pay Chase any attorney fees. BWP has not disputed that if BWP is solvent, as the Court has now found, the Plan must pay Chase its reasonable

20

attorney fees as part of its allowed claim, under *Dow,* because Chase is contractually entitled to such fees. Chase claims that its attorney fees total $64,256.90 as of May 19, 2011.[29] Such claimed fees may or may not be reasonable, but the important point here is that BWP's plan does not propose to pay Chase *any* attorney fees. So BWP's plan clearly does not satisfy *Dow's* requirements for a solvent debtor.

BWP's counsel indicated at the confirmation hearing that BWP may be willing to pay Chase's reasonable attorney fees. But there is no provision for them in BWP's Plan. The Plan says nothing about them, and the total amount of BWP's claim as set by the Plan, secured plus unsecured, does not include any attorney fees. The Plan's total amount for BWP's claim obviously was taken directly from Chase's originally-filed proof of claim, the first page of which stated a total claim amount of $2,010,172.64.[30] Chase's "Statement of Interest or Additional Charges," on the second page of that proof of claim, however, makes clear that this claim amount includes no specific dollar amount for attorney fees.[31] It requested reasonable attorney fees without quantifying them.

### 3. Chase's other objections

Chase objected to confirmation of BWP's Plan on additional grounds, not discussed above, and also objected to final approval of BWP's disclosure statement. The Court finds it unnecessary to discuss these other objections now, for the following reasons. First, the Court is denying confirmation on other grounds, for the reasons stated in this opinion. Second, the Court

---

[29] *See* Chase's amended proof of claim, no. 9-2, filed May 24, 2011, at p. 2.

[30] *See* Chase's proof of claim, filed December 14, 2010 (Claim 9-1) at p. 1, Box 1.

[31] *See id.* at p. 2, part (E).

will allow BWP another opportunity to try to confirm a plan, by filing a new plan and disclosure statement. The Court anticipates that BWP will file a plan and disclosure statement that will make some or all of BWP's other objections moot. Third, at least some of Chase's other objections may be mooted, and some of the important facts underlying some of the objections may have changed, in the time after the confirmation hearing. Important post-hearing developments include the Lickwala's filing of their Chapter 7 case, and recent events in that case.

## IV. Conclusion

For the reasons stated in this opinion, the Court will deny confirmation of BWP's Plan. The Court will enter a separate order. The order will allow BWP to file a new plan and disclosure statement, and will set a deadline for doing so.

**Signed on December 23, 2011**          **/s/ Thomas J. Tucker**
                                          **Thomas J. Tucker**
                                          **United States Bankruptcy Judge**

22